UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUAN JESUS CHAIDEZ,

    Plaintiff,

    v.

ALAMEDA COUNTY, et al.,

    Defendants.

Case No. 21-cv-04240-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS WITH LEAVE TO AMEND**

## I. INTRODUCTION

On September 2, 2020, Juan Chaidez was shot eleven times, including in his stomach.[1] This stomach injury necessitated surgery that left Chaidez with a stoma and accompanying colostomy bag. Chaidez was brought to Santa Rita Jail directly from the hospital that had been treating him for his injuries and booked for violating the terms of his probation. Months later, he was found unconscious in his cell and brought to the hospital, where he was diagnosed with sepsis, a 102-degree fever, irregular "colonic wall thickening," and colitis. Chaidez now brings a claim under 43 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment against (1) Dr. Maria Magat and (2) Does 1–50 ("Does"), unnamed employees of Alameda County and California Forensic Medical Group ("CFMG").[2] He

---

[1] All facts in this Order are drawn from the Second Amended Complaint and must be taken as true for the purpose of resolving Defendants' respective motions to dismiss. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

[2] CFMG is a corporation that contracts with Alameda County to provide medical and other related

United States District Court
Northern District of California

1    also brings a *Monell* claim against Alameda County and the County Does.[3] Defendants have

2    moved to dismiss the claims asserted in Chaidez's Second Amended Complaint ("SAC").[4] For the

3    reasons discussed below, the motions to dismiss are granted in part and denied in part.

4                                   **II. BACKGROUND**

5          When Chaidez arrived at Santa Rita Jail as a pretrial detainee around October 21, 2020,

6    medical and other personnel were made aware of Chaidez's stoma, colostomy bag, and the risk

7    that the stoma might become infected absent consistent medical care. On November 5, 2020,

8    approximately two weeks after arriving at the jail, Chaidez submitted a medical request form

9    alerting jail personnel that although he was supposed to receive two colostomy bags per day, those

10   bags had been arriving late or not at all. Nine days later, Chaidez submitted a second medical

11   request form, this time alerting staff that insufficient medical attention was creating unsanitary

12   conditions for his stoma. After another eight days passed, Chaidez submitted a third medical

13   request form in which he asked to be examined by medical staff for his gunshot injuries, including

14   his stoma. As a general matter, the colostomy bags Chaidez received over the course of his

15   detention were inadequate. The adhesives on the bags would often come undone, exposing

16   Chaidez's stoma to infection and allowing fecal matter to leak out. This leakage caused rashes on

17   Chaidez's stomach around his stoma.

18         By December 2020, Chaidez's stoma was producing a foul-smelling pus. He notified

19   CFMG medical staff and jail personnel of this discharge and made several requests for medical

20   care. These requests for care were ignored for weeks. Finally, in January 2021, Chaidez was seen

21   by Dr. Maria Magat, a CFMG employee. Dr. Magat observed whitish-yellowish discharge issuing

22

23   _____

     services at Santa Rita Jail.

24
     [3] Despite naming CFMG as a Defendant, Chaidez does not appear to assert any claims against
25   CFMG in his Second Amended Complaint. CFMG will be dismissed with leave to amend.

26   [4] Defendants filed two motions to dismiss according to their respective groupings: (1) Defendants
     Dr. Maria Magat and CFMG; and (2) Defendants Alameda County and Does 1-50, to the extent
27   Does are County Employees (the "County Defendants").

28                                         ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
                                           CASE NO.  21-cv-04240-RS

United States District Court
Northern District of California

1   from the stoma but declined (1) to prescribe Chaidez any medication or (2) to provide further

2   instructions regarding how Chaidez should address the discharge from or the rashes around his

3   stoma. Chaidez's condition continued to worsen following Dr. Magat's visit. More and more

4   discharge issued from his stoma, "to the point that Chaidez collected it in cups and [gave] it to

5   Defendant Doe Nurses." SAC ¶ 22. Chaidez still did not receive appropriate care. He decided to

6   file a grievance, which produced an investigation within the jail but did not lead to improved

7   medical treatment.

8       Matters came to a head on March 10, 2021, when Chaidez developed a high fever, intense

9   stomach pains, and found himself unable to eat. Dr. Magat saw him that day, elected to treat his

10   fever only, and declined to send him to the hospital. Chaidez's fever continued to worsen, and the

11   very next day—March 11—he was rushed to Highland Hospital after being found unconscious in

12   his cell by Alameda County Sheriff's Deputies. At the hospital, Chaidez was diagnosed with

13   sepsis, a 102-degree fever, colitis, and a "concerning irregular masslike colonic wall thickening,"

14   and was treated for infectious colitis. SAC ¶ 26. Chaidez suffered extreme emotional stress and

15   painful physical symptoms due to the lack of medical care he received at Santa Rita Jail, including

16   stomach and pelvic pain, significant discharge from his stoma, sepsis, colitis, and bleeding around

17   his stoma. He was initially expected to need a colostomy bag for only three to six months

18   following his fall 2020 surgery, but because his stoma became infected, he ended up needing the

19   colostomy bag for nearly three years.

20       The parties agree Chaidez's claim accrued on or about March 11, 2021. Chaidez filed his

21   initial complaint alleging constitutional violations on June 3, 2021, several months after

22   developing an infection in Santa Rita Jail and being hospitalized. Though that complaint was

23   dismissed for failure to prosecute six months later, Chaidez obtained counsel and filed a motion to

24   reopen his case on February 23, 2023. The motion to reopen was granted by this Court on March

25   30, 2023, and Chaidez was given until May 8, 2023, to file an amended complaint. Chaidez met

26   this deadline.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### IV. DISCUSSION

#### A.  Timeliness

As a threshold matter, the County Defendants argue Chaidez's claims against them are time-barred under (1) Rule 60(c)(1) and (2) the relevant statute of limitations for Section 1983 claims brought in California. As explained below, neither presents a legal impediment.

##### i.      Rule 60(c)(1)

Federal Rule of Civil Procedure 60 governs motions for relief from judgment. A court may offer relief from judgment and allow a party to reopen a case under any of the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6). Such a motion must be made within a "reasonable time," and "for reasons (1), (2), and (3) no more than year after the entry of the judgment or order." Fed. R. Civ.

P. 60(c)(1). The County Defendants incorrectly argue this "one-year" requirement applies to all motions for relief from judgment filed under Rule 60(b). The Ninth Circuit has held Rule 60(b) imposes a one-year requirement for motions brought under Rule 60(b)(1), (2), or (3), but that a party seeking relief under Rule 60(b)(6) need not file their motion within one year—just within a "reasonable time." *Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir. 2020) (citing Fed. R. Civ. P. 60(c)(1)). This is so—as least for Rule 60(b)(6)—in order to preserve the provision's utility as a "grand reservoir of equitable power." *Id.* (quoting *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017)).

Chaidez's motion to reopen was brought slightly more than one year after his initial case was dismissed—apparently after Chaidez obtained counsel. The motion to reopen was granted under Rule 60(b)(6) under this Court's inherent "discretion and power to vacate judgments whenever such action is appropriate to accomplish justice." *Hall*, 861 F.3d at 987 (citation omitted). Under the circumstances, the motion was brought within a reasonable time and, therefore, was timely under Rule 60(b)(6).

### ii.     Statute of Limitations

Second, the County Defendants contend the applicable two-year statute of limitations for a Section 1983 claim in California bars Chaidez's claims as against them. Section 1983 does not contain a federal statute of limitations, so courts apply the forum State's statute of limitations for personal injury claims. The relevant statute of limitations in California is two years. *See* Cal. Civ. Proc. Code § 335.1; *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law.").[5]

---

[5] Potentially dispositive of the statute of limitations issue (but not briefed by the parties) is the fact that the two-year statute of limitations for Section 1983 claims is tolled for two years if the plaintiff is imprisoned and serving a term for less than life. *See* Cal. Civ. Proc. Code § 352.1(a). In *Elliott v. City of Union City*, the Ninth Circuit concluded § 352.1(a) applies to pretrial detainees in addition to individuals serving terms of imprisonment. 25 F.3d 800, 802–03 (9th Cir. 1994). It reasoned that "actual, uninterrupted incarceration is the touchstone" in making the determination

1    Courts have held that where a plaintiff files a petition seeking leave to file an amended

2 complaint and, while that petition is pending, the statute of limitations expires, the amended

3 complaint may be deemed filed within the limitations period. *See, e.g.*, *Beech v. San Joaquin*

4 *County*, No. 15-cv-268, 2017 WL 5177654, at *2 (E.D. Cal. Nov. 8, 2017) (citing *Moore v. State*

5 *of Indiana*, 999 F.2d 1125 (7th Cir. 1993)). The County Defendants contend this precedent is

6 inapposite because Chaidez did not file his motion to reopen against the County Defendants.

7 Chaidez, however, was given leave to file an amended complaint without any limitations

8 regarding which defendants might be sued. Second, unlike in the cases Chaidez cites where the

9 relevant plaintiffs attached copies of their respective proposed amended pleadings to their petitions

10 for leave to amend, Chaidez did not attach a copy of his proposed amended complaint to his

11 motion to reopen. That said, it is not clear that whether the fact plaintiffs' proposed filings were

12 attached to their timely-filed motions was dispositive, as opposed to merely persuasive, in *Beech*

13 or *Moore*. Despite this case's slightly different factual posture, the principle outlined in *Beech* and

14 *Moore* applies with equal force. Chaidez filed his motion to reopen on February 23, 2023 (before

15 the statute of limitations expired on March 11, 2023) and then filed his First Amended Complaint

16 within the time period specified by this Court. Chaidez's claims against the County Defendants are

17 deemed, therefore, to have been timely filed.

18    Even if it were inappropriate to apply the principle espoused in *Beech* and *Moore*,

19 equitable tolling would be appropriate. In California, equitable tolling is a "judicially created,

20 nonstatutory doctrine" that will "suspend or extend a statute of limitations as necessary to ensure

21 fundamental practicality and fairness." *McDonald v. Antelope Valley Comm. Coll. Dist.*, 194 P.3d

22

23 ─────────────

24 for whether § 352.1(a) applies to pretrial detainees. *Id.* at 803. The California Court of Appeal, on
the other hand, found more recently that § 352.1 does not apply to pretrial detainees. *See Austin v.*

25 *Medicis*, 230 Cal. Rptr. 3d 528, 531 (Ct. App. 2018). There is now a split within this Circuit
regarding whether to follow *Elliott* or *Austin*. *See, e.g.*, *Alexander v. County of Los Angeles*,

26 No. 18-cv-8873, 2021 WL 2407703, at *4 (C.D. Cal. Mar. 18, 2021) ("Some district courts in this
circuit have applied *Austin*, while others have continued to apply *Elliot*."). Given this Court's

27 conclusion that the statute of limitations does not bar Chaidez's claims on other grounds, it need
not be decided whether to follow *Elliot* or *Austin* in this instance.

28

1026, 1031 (Cal. 2008) (citation omitted). Equitable tolling applies where there is (1) timely notice, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct by the plaintiff. *St. Francis Mem. Hosp. v. State Dep't of Pub. Health*, 467 P.3d 1033, 1041 (Cal. 2020); *see also Pearson v. California*, No. 20-cv-5726, 2022 WL 377012, at *7 (N.D. Cal. Feb. 8, 2022) (applying factors and finding equitable tolling appropriate). Each of these factors is present.

The County Defendants do not claim that they lacked notice of Chaidez's initial suit (filed in 2021) or of his plans to file an amended complaint. Indeed, it appears the Alameda County Counsel's Office was served with a copy of Chaidez's initial complaint as far back as January 2022. Nor do the County Defendants argue they will be prejudiced by the two-month delay between the expiration of the statute of limitation on March 11, 2023, and the filing of Chaidez's First Amended Complaint on May 8, 2023. On the other hand, Chaidez, newly represented by counsel, appears to have made good-faith efforts to file his motion to reopen before the statute of limitations expired in March 2023. Those efforts were reasonable.

For these reasons, Chaidez's claims against the County Defendants are not time-barred.

**B. Deliberate Indifference Claim**

Moving to the merits, Chaidez's first avers that Defendants Dr. Magat and Does 1-50 (various unnamed CFMG employees and jail officials) violated his Fourteenth Amendment right to be free from deliberate indifference to his serious medical needs. The Due Process Clause of the Fourteenth Amendment governs claims for injuries suffered by pretrial detainees. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016). A claim for a violation of a pretrial detainee's right to adequate medical care under the Fourteenth Amendment is evaluated under an objective deliberate indifference standard. *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). The elements of such a claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved— making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

United States District Court
Northern District of California

*Id.* at 1125 (adopting an objective reasonableness standard with respect to the third prong). For the third element, proof is required of "something more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (citation omitted). At this stage, Chaidez's deliberate indifference claim is sufficiently pled to survive against Dr. Magat and Does 1–50 (unnamed employees of Alameda County and CFMG).

      **i.**    **Dr. Magat**

Dr. Magat does not dispute that Chaidez's stoma and colostomy bag presented a serious medical need. See Dkt. 42, at 4. Rather, Dr. Magat contends Chaidez fails to "allege any facts establishing that Dr. Magat acted with reckless disregard to his needs." *Id.* at 5. The SAC asserts Dr. Magat was deliberately indifferent to (1) Chaidez's months-long issues with his stoma to the extent that the stoma produced large quantities of pus and the stoma's leakage caused rashes on Chaidez's skin when she saw him in January 2021 and (2) Chaidez's acute fever and symptoms of infection when she saw him in March 2021. This second visit, of course, culminated in an emergency hospital stay when jail personnel found Chaidez unconscious in his cell the day after Dr. Magat saw him.

Contrary to Dr. Magat's contentions, *see, e.g.*, *id.*, Chaidez avers Dr. Magat ignored his medical needs. When Chaidez first saw Dr. Magat in January 2021, he argues he was "refused any prescribed sort of medication or given any instructions on how to deal with this discharge and the rashes around the stoma." SAC ¶ 21. Chaidez next saw Dr. Magat on March 10, 2021, while in the throes of a "high fever and intense stomach pains." *Id.* ¶ 24. Chaidez claims that Dr. Magat refused to send him to the hospital on March 10 despite his condition and "only provided treatment for his fever." *Id.* These allegations appear to contradict Dr. Magat's claim that Chaidez "makes no allegations that Dr. Magat ignored his medical requests." Dkt. 42, at 5–6. Chaidez's averments go beyond "merely a disagreement with doctors' testing, diagnoses, and treatment decisions." *Pries v. Contra Costa County*, No. 21-cv-4890, 2023 WL 1928216, at *3 (N.D. Cal. Feb. 10, 2023).

At this juncture, accepting the SAC's allegations as true, Chaidez plausibly establishes a

1    claim for deliberate indifference against Dr. Magat. Chaidez's averments that Dr. Magat did not

2    offer treatment options when she saw him in January to deal with his ailing stoma, as well as that

3    Dr. Magat failed to take steps beyond treating Chaidez's fever on March 10 such that Chaidez

4    collapsed the following day and was rushed to the hospital, are sufficient to plead that Dr. Magat

5    acted with reckless disregard to Chaidez's serious medical needs. Chaidez plausibly alleges that a

6    reasonable official would have treated Chaidez's stoma-related issues, as well as the underlying

7    infection that brought him to the hospital on March 11, 2023.

8            ii.        Does 1–50

9            Chaidez further avers that various unnamed CFMG employees and Alameda County prison

10   officials were deliberately indifferent to his stoma-related needs by failing to provide him with

11   colostomy bags in adequate quantities and condition and by failing to address the substantial

12   quantities of foul-smelling pus his stoma produced over the course of months. While the use of

13   "Doe" defendants is not favored in the Ninth Circuit. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th

14   Cir. 1980), where a complaint alleges "the identity of alleged defendants will not be known prior

15   to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to

16   identify the unknown defendants, unless it is clear that discovery would not uncover the identities,

17   or that the complaint would be dismissed on other grounds." *Id.*; *see also Miles v. County of*

18   *Alameda*, No. 22-cv-6707, 2023 WL 2766663, at *6–7 (N.D. Cal. Apr. 3, 2023) (directing parties

19   to engage in initial discovery to learn identities of individual Doe defendants).

20           Chaidez avers that County and CFMG personnel failed, over the course of months, to

21   respond to his requests for medical treatment for his stoma-related issues. These averments

22   contradict the County Defendants' argument (to the extent Does 1-50 are County employees) that

23   Chaidez's complaint lacks "any specific factual allegations against them." Dkt. 43, at 17. Chaidez

24   claims he submitted at least three medical requests to address unsanitary conditions around his

25   stoma and "showed the discharge leaking from his stoma" to County and CFMG personnel several

26   times, even collecting it in "cups" and "giving it to Defendant Doe Nurses." *See, e.g.*, SAC ¶¶ 20,

27   22. Further, personnel at Santa Rita Jail had been made aware when Chaidez originally arrived

28

that special care would be required to maintain sanitary conditions for his stoma. Chaidez avers this inattention to his serious medical needs led him to develop infection.

These averments against Does 1-50 are also sufficient at this stage to show objective deliberate indifference to Chaidez's serious medical needs. The parties should conduct initial discovery aimed at determining the identity of Does 1-50 and developing relevant facts that would support Chaidez's claims against them. Chaidez must file any amended complaint by January 15, 2024.

**C.** *Monell* **Claim**

**i.      Individual Alameda County Employees**

As an initial matter, Chaidez appears to bring his *Monell* claim against individual defendants (Does 1–50). A claim for municipal liability cannot be brought against individual defendants. *See, e.g.*, *Magdaleno v. County of Riverside*, 21-cv-2027, 2022 WL 1843977, at *3 (C.D. Cal. Apr. 14, 2022). Thus, Chaidez's *Monell* claim against individual defendants is dismissed without leave to amend because any amendment would be futile.

**ii.      Alameda County**

A municipality, on the other hand, may be liable under Section 1983 if the municipality subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation. *Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 691–92 (1978). Because municipalities cannot be held vicariously liable under Section 1983, a *Monell* claim ordinarily requires the existence of municipal policies, customs, practices and/or procedures that violate constitutionally protected rights. *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011). "[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. A plaintiff may demonstrate the existence of a policy through a pattern of deliberate omission, such as a failure to train, or a final policy-maker's involvement in, or ratification of, the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–1250 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d 1060.

1    Municipal entities can be liable for policies of inaction if they fail to "implement

2    procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d

3    1128, 1144 (9th Cir. 2012). "To impose liability against a county for its failure to act, a plaintiff

4    must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the

5    county has customs or policies that amount to deliberate indifference; and (3) that these customs

6    or policies were the moving force behind the employee's violation of constitutional rights." *Long*

7    *v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *Gibson v. County of*

8    *Washoe*, 290 F.3d 1175, 1193–94 (9th Cir. 2002)). The plaintiff bears the burden of showing "the

9    injury would have been avoided" had proper policies been implemented. *Gibson*, 290 F.3d at 1196

10    (quoting *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992)).

11    First, Chaidez has plausibly pled that at least one as-yet-unnamed County employee

12    violated his Fourteenth Amendment right to adequate medical care. As explained above, Chaidez

13    showed "Defendant Doe Deputies"—who Chaidez believes to be County employees—his leaking

14    stoma and requested medical care. SAC ¶ 20. Chaidez avers that he made multiple requests for

15    care without a timely response from those employees. Similarly, Chaidez has plausibly pled that

16    CFMG nurses denied him his right to adequate medical care given his averment that he "collected

17    [his pus] in cups" and showed it to the nurses. *Id.* ¶ 22. Alameda County, of course, cannot escape

18    *Monell* liability by contracting out medical care for pretrial detainees—it still has a constitutional

19    responsibility to provide "adequate medical treatment to those in its custody." *West v. Atkins*, 487

20    U.S. 42, 56 (1988).

21    Second, Chaidez's failure-to-train theory of municipal liability is sufficient at this stage to

22    make out a claim of deliberate indifference on the part of Alameda County.[6] "[A] local

_____

[6] To the extent Chaidez premises his *Monell* claim on alternative theories (such as ratification), it
is not necessary to evaluate those theories at this stage. *See, e.g.*, *Quinto-Collins v. Antioch*,
No. 21-cv-06094, 2022 WL 18574, at *2 (N.D. Cal. Jan. 3, 2022) (explaining that *Monell* theories
of liability are "best understood . . . as different arguments in support of a single claim"). Chaidez
has adequately pled a failure-to-train theory, and thus may pursue his *Monell* claim "and different
theories in support of it." *Id.*

government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. Success on this *Monell* theory requires a plaintiff to show a pattern of similar constitutional violations by untrained employees, such that decisionmakers were on notice a course of training was deficient. *See, e.g.*, *Long*, 442 F.3d at 1186. Deliberate indifference is established where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Where a policy is not obviously facially deficient, a plaintiff must "point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1142 (9th Cir. 2020).

Chaidez avers that since 2013, there have been at least nine instances resulting in lawsuits (including his own) where pretrial detainees at Santa Rita Jail have not received adequate medical care. He provides facts supporting each example, including the name of the detainee and the circumstances of inadequate medical care.[7] These supportive facts are analogous to Chaidez's factual averments regarding his own experience at Santa Rita Jail, including "ignored" medical requests, denials of necessary medication, and insufficient medical treatment. The County Defendants are incorrect, therefore, in asserting Chaidez offers no factual claims in support of a failure-to-train theory.[8] Chaidez also avers that 66 pretrial detainees have died at Santa Rita Jail since 2014. Chaidez plausibly pleads that Alameda County has failed to train personnel at Santa Rita Jail to provide detainees with necessary medical treatment, and that this failure to train

---

[7] These instances are supported with sufficient detail to put the County Defendants on notice of the alleged policy connecting them.

[8] To the extent the County Defendants suggest this Court can "swiftly disregard" previous claims of unconstitutional conduct against them, they are mistaken. Dkt. 43, at 18. Such claims are necessary, in the ordinary case, to show a "pattern of similar constitutional violations by untrained employees" as part of a failure-to-train theory. *Connick*, 563 U.S. at 62.

United States District Court
Northern District of California

constitutes deliberate indifference. Further, Alameda County can be held liable for constitutionally inadequate care rendered by CFMG nurses under the same *Monell* theory. *See, e.g.*, *Pajas v. County of Monterey*, No. 16-cv-945, 2018 WL 5819674, at *7 (N.D. Cal. Nov. 5, 2018) (finding a municipality's custom or policy of failing to ensure health care contractor provided constitutionally adequate care to inmates could give rise to liability under a *Monell* theory).

Third, Chaidez has adequately averred Alameda County's failure to train its employees how to respond to detainees' serious medical needs was the moving force behind the violation of right (and the right of other pretrial detainees at Santa Rita Jail) to adequate medical care. He successfully identifies a nexus between Alameda County's failure to train employees how to handle detainees' serious medical needs in a timely manner and the resulting pattern of failure to provide adequate medical care that has resulted in nine separate lawsuits. Thus, Chaidez has adequately pled a *Monell* claim against Alameda County under a failure-to-train theory of municipal liability.

## V. CONCLUSION

For the aforementioned reasons, Plaintiff's Fourteenth Amendment claim against Defendants Dr. Maria Magat and Does 1-50 (unnamed employees of Alameda County and CFMG) survives, as does Plaintiff's *Monell* claim against Alameda County. Defendant's *Monell* claim as against individual employees of Alameda County, however, is dismissed without leave to amend. Any claims against CFMG are dismissed with leave to amend. The Clerk shall terminate this Defendant.

If Plaintiff intends to name Doe defendants, he must do so by way of an amended complaint, filed no later than January 15, 2024, which includes specific facts against the named defendants. Otherwise, the Doe defendants will be dismissed.

1   **IT IS SO ORDERED**.

2

3   Dated: October 3, 2023

4   _____

5   RICHARD SEEBORG

6   Chief United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California